1  **STEVEN R. JACOBSEN,** BAR NO. 95246
   srj@theaccidentallawyer.com
2  **BRENDA D. POSADA,** BAR NO. 152480
   bdp@theaccidentallawyer.com
3  **LAW OFFICES OF STEVEN R. JACOBSEN**
   **901 CLAY STREET**
4  **OAKLAND, CALIFORNIA 94607**
   **TELEPHONE: (510) 465-1500**
5
   **ATTORNEYS FOR PLAINTIFF**
6  **JOSE RODRIGUEZ**

7

8                IN THE UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11  JOSE RODRIGUEZ,                    ) Case No.: C-07-03630 PJH
                                       )
12          Plaintiff,                 ) **PLAINTIFF'S TRIAL BRIEF**
                                       )
13      vs.                            )
                                       ) TRIAL DATE: September 22, 2008
14  OWENS-BROCKWAY GLASS               ) TIME:          8:30 a.m.
    CONTAINER, INC., et al.,           ) LOCATION:   Courtroom 3, 17th Floor
15                                     )
            Defendants.                )
16  _____)

17          Plaintiff, Jose Rodriguez herewith submits the following trial brief pursuant to this court's

18  Case Management and PreTrial Order of October 19, 2008.  Steven R. Jacobsen and Brenda D.

19  Posada of The Law Offices of Steven R. Jacobsen represent the plaintiff.  The defendant is

20  represented by Stephen M. Hankins of Schiff, Hardin LLP.

21                                    **I.**

22                            **CASE BACKGROUND**

23          On May 15, 2005, Jose Rodriguez, a Class A truck driver for Yandell Trucking was at the Owens –

24  Brockway Glass Container, Inc.'s ("Owens-Brockway") facility located in Oakland, California.  Owens-

25  Brockway manufactures glass containers used by various commercial vendors of beverages.  The Oakland

26  facility operates twenty-four hours a day, seven days per week.  At approximately 4:00 p.m., Mr. Rodriguez

27  pulled his truck into Building 10 of the Owen-Brockway facility.  Building 10 has fourteen loading docks.  In

28  order for Owen-Brockway forklift drivers to load a truck, the truck backs into a narrow loading dock.  Behind

the dock is a ramp that leads from the Owen-Brockway warehouse. According to John Keaney, the forklift driver who ran over Mr. Rodriguez' foot, the ramp slopes downward from the dock to the warehouse. Videotape of the loading dock does not indicate a slope.

At approximately 4:30 p.m. Mr. Rodriguez, who had been talking to another driver while Mr. Keaney loaded the Yandell truck, returned to the truck to see the progress of the load. As Mr. Rodriguez stood on the dock, Mr. Keaney backed the forklift out of the truck and ran over Mr. Rodriguez' right foot. Mr. Keaney then pulled forward and ran over Mr. Rodriguez' foot for a second time causing Mr. Rodriguez to fall to the ground.

Mr. Keaney testified that there is a large sign located at Building 10, which indicates that drivers are to remain in the cabs of their trucks while the trucks are being loaded. No photographs of any signage have been produced. Mr. Keaney testified that drivers rarely stay in their trucks and typically walk around the loading dock and speak with other drivers while waiting for their loads. Indeed, both plaintiff and plaintiff's expert will testify that Class A drivers must stand on the dock to check the load, especially when the load is of glass products; in this case, Martinelli's Apple Juice jars.

## II

## LIABILITY

### A.    Standard of Care

According to forklift expert, Robert Jasinsky, the operations of powered industrial trucks, aka forklifts, are governed by federal and state regulations as well as industry standards. These regulations are all based on studies of real world accidents. The regulations and standards not followed by the forklift operator in this case are the following:

CalOSHA GISO 3650 (12): Operators shall look in the direction of travel and not move a vehicle until certain that all persons are in the clear.

OSHA 1910.178 (n) (6): The driver shall be required to look in the direction of, and keep a clear view of the path of travel.

ANSI/ITSDF B56.1, 5.3.6: Traveling-Keep a clear view of path of travel and observe for other traffic, personnel, and safe clearances.

In this case, it was vital, according to Mr. Jasinsky's expert report, that forklift operator be aware of his surroundings.  It is necessary that the forklift operator anticipate the possibility that a driver will, at any time, check the load of his truck. Owens, according to the forklift operator John Keaney, truck drivers are allowed to check their truck at will and there are no controls in place to segregate forklift activity from truck drivers. With no controls in place governing pedestrian safety, the likelihood of a forklift/pedestrian accident is significant. "Industry accepted best practice is to require drivers to wait in the safety of their cabs or have a driver waiting lounge where drivers are required to stay in the loading/offloading process is complete." See p.2 of Expert Report of Robert P. Jasinsky.

Furthermore, according to the expert, OSHA regulation 1910.178 (1) and CalOSHA regulation GISO 3668 both require that employers provide formal instruction for forklift operators in the hazards associated with powered industrial trucks. "In addition, operators are required to receive practical (hands on) training and pass an evaluation of the operator's performance in the workplace.  Defendant Owen's employee John Keaney could not produce any training records.  He cannot therefore prove that the OSHA/CalOSHA compliant training took place.  According to expert Jasinsky, the training requirement is quite specific, and includes coverage of the general hazards created by forklift use as well as the specific hazards that exist with a particular workplace or equipment type.  See OSHA 1910.178(l) and CalOSHA GISO 3668 Forklift Operator training.

**B.    Statement of Claims**

Plaintiff claims that defendant's employee, John Keaney, was negligent in the operation of his forklift.  He failed to look behind him when he ran over Mr. Rodriguez' right foot.  Plaintiff further claims that Owens-Brockway did not properly train Mr. Keaney to operate a forklift pursuant to Federal and California OSHA standards that require training and re-certification every three years.  Plaintiff further claims that Owens- Brockway failed to report this industrial accident pursuant to OSHA standards, and therefore no formal investigation was ever completed as required by law.  Plaintiff further contends that Owens-Brockway's Oakland plant presents an unsafe work environment because the forklift drivers exceed the legally mandated speed limit of 10 miles per hour.

**A.      John Keaney's Inconsistent Statements.**

In order to understand plaintiff's position, it is first necessary to dissect the conflicts in Mr. Keaney's deposition testimony, and the diagrams and notes made by Mr. Keaney's supervisor at the time of the accident.   It is also necessary to understand the operation of a loading dock, and truck and forklift configurations.   The Yandell truck that Mr. Rodriguez was using was a conventional truck, with a cab where the truck driver sits.  The cab is hooked up to a trailer.  The trailer, in this case, was to be loaded with Owens-Brockway skids.  When a truck backs into a loading dock, the trailer backs in first.  Attached to the loading dock is a metal plate that can be extended into the trailer bed either manually or mechanically.  The metal plate acts as a ramp.  A forklift, lift truck, or industrial truck, (as identified in OSHA standards) is a vehicle with two blades in the front.  The forklift operator moves the blades through a skid.  A skid is a pallet that contains various materials. In this case, Martinelli glass jars.  When loading a trailer, the forklift travels down the loading dock, up the metal plate and then into the trailer bed to deposit the skids.

Pursuant to Mr. Keaney's deposition testimony he had two skids, numbered 17 and 18, on his forklift that he intended to load into Mr. Rodriguez' trailer.  According to Mr. Keaney, these skids were placed on top of each other on the right side of the "van".  However, according to the diagram prepared by his supervisor, from statements taken from Mr. Keaney, the skids were placed next to each other in the back of the trailer.   If Mr. Keaney's statements to his supervisor, taken immediately after the accident, are to be believed, Mr. Keaney would have backed straight out of the trailer and onto the metal plate which is centered in the trailer bed.

Mr. Keaney claims that Mr. Rodriguez was standing on the left hand side of the metal plate when he ran over his foot.  Mr. Keaney had not yet reached the dock with the forklift and therefore was still centered as he backed out of the trailer.  Mr. Keaney has two differing recitations of facts. At first he testified that he saw Mr. Rodriguez before running over his toe:

Q.      And tell me what happened.

A.      I set the two pallets against the down against the wall and I was coming back slow
          because if you come back too fast the tips of the fork will catch the two pallets and
          you will have a problem.  So I was coming back slow as soon as the fork cleared the

pallet I looked to my right to see if the other fork was coming up the ramp because we work fast - - all clear.  Come back look to my left and was backing up and the driver said you ran over my toe and he didn't make a noise.  I looked down and I said oh my God lay down.  I said lay down on the dock.

Q.    And you didn't see him.

A.    No, no.  I saw him standing there but I ran over his toe, but I ran over his toe.  He was standing right next to me when he said that.

Then, Mr. Keaney completely changed his testimony and stated that he didn't see Mr. Rodriguez because he was in his blind spot.  When queried about this "blind spot", Mr. Keaney could only state that this was the configuration of the forklift and could not elaborate further.

Plaintiff's forklift and Class A truck driver experts will testify that in this circumstance there was no blind spot.   The only blind spot on a forklift is in the front (when a load is present).  There is no blind spot on the rear of a forklift.  The more plausible explanation for this accident is that Mr. Keaney was making a wide turn to travel back up the dock while still on the metal plate, and made a turn to his right as he backed up.  In the process of making a wide right turn, Mr. Keaney failed to look to his left.  He ran over Mr. Rodriguez' right foot, stopped, then ran over it again knocking Mr. Rodriguez to the ground.

Alternatively, Mr. Keaney saw Mr. Rodriguez, as he first testified, and failed to stop in time.  A forklift traveling at 10 miles per hour when the brake is applied will still travel 1.3 feet.  Either way, Mr. Keaney failed to maintain a proper lookout, and operated the forklift in a dangerous and negligent manner which proximately resulted in the injury to Mr. Rodriguez.

### B.    John Keaney's Lack of Training

Mr. Keaney could not produce a forklift certification at the time of his deposition.  He could not recall the last time he was trained or when he received his last certification.  Federal OSHA standard 1910.178 requires employers to have in place a program of training and re-certification every three years.  The required program is designed to avoid the careless and negligent operation of forklifts, and to avoid the very type of incident that occurred here.  Mr. Keaney was not a certified forklift driver at the time of the accident and Owens-Brockway has no training program in place for

1  senior employees.

2      **C.    Owens-Brockway Does Not Provide A Safe Workplace.**

3      Mr. Keaney admitted that the dock at the Owens-Brockway plant is quite narrow.  As a

4  result in order to turn the forklift a wide turn must be made when loading or unloading.  When

5  making these turns, forklift drivers find it difficult to look both ways because their focus is on the

6  turn onto the narrow ramp and not may be directly behind them.  Videotape of the Owens-

7  Brockway loading dock will be available at the time of the settlement conference and will confirm

8  the hazardous configuration of the loading dock.  Further, plaintiff's experts will testify that the

9  configuration of the Owens-Brockway ramp poses a hazard due to its narrow configuration which

10  does not facilitate to forklift drivers un-obscured vision while backing out of a trailer onto the dock.

11      **D.    Owens-Brockway Failed To Report This Industrial Accident To Cal. OSHA.**

12      Industrial accidents that cause significant injury must be reported to California OSHA.  This

13  is because there must be a thorough investigation into the cause of the injury.  Owens-Brockway's

14  counsel has admitted that their client conducted their own investigation and "found no fault with

15  Mr. Keaney".  No statement was taken from Mr. Rodriguez, and as noted above, the testimony of

16  Mr. Keaney compared to the diagrams and notes presented by Mr. Keaney's supervisor differ

17  widely.  Indeed, there wasn't even a standard incident report taken, only what Owens-Brockway

18  employees set forth.

19      **C. Facts in Dispute**

20      Plaintiff contends that Mr. Keaney saw Mr. Rodriguez before running over his foot.

21  Plaintiff's expert will testify that if a forklift is being driven at 10 miles per hour it will take a

22  minimum of 1.3 feet to stop once braked.  Mr. Keaney saw Mr. Keaney but could not stop in time.

23      Plaintiff contends that Owens-Brockway violated OSHA requirements by failing to properly

24  train and re-certify Mr. Keaney.

25      Plaintiff claims that Owens-Brockway did not provide a safe work environment because the

26  loading dock was too narrow to allow forklifts to move in and out of trailers without having to make

27  excessive turns causing the drivers to have obscured vision.

28

**III.**

**DAMAGES SUSTAINED**

**A.      Plaintiff's Injuries**

Mr. Rodriguez was taken by ambulance to San Leandro Hospital where he was admitted.  At the time of admission his principal complaint was the crush injury to his right toe, but he also complained of thoracic and knee pain from the fall.  An x-ray revealed an avulsion fracture of the right great toe.  Given the severity of the right toe fracture, Mr. Rodriguez was admitted and surgery was scheduled for the following day.

Podiatrist Eric Nelson performed the surgery.  Upon opening the laceration he found that both collateral ligaments were completely torn and a there was a complete dislocation of the right great toe.  Dr. Nelson performed an internal fixation of the ligaments and a repair of the joint dislocation.

Mr. Rodriguez returned to Dr. Nelson for suture and wire removal within the month following the accident.  However, Mr. Rodriguez suffered necrosis at the wound.  On June 15, 2005, Dr. Nelson performed a debridement and found that the necrotic tissue had extended to the subcutaneous tissue and tendon.

During his treatment with Dr. Nelson, Mr. Rodriguez continued to experience pain in his hip and knee.  Dr. Nelson referred Mr. Rodriguez for an orthopedic consultation.  It is unclear from the records we have received thus far if Mr. Rodriguez received any orthopedic care.

The necrosis continued to spread, and from June 15 through August 18, 2005, Dr. Nelson continued to use a scalpel to remove necrotic tissue.  Mr. Rodriguez continued to follow-up with Dr. Nelson through September 22, 2005, at which time Dr. Nelson determined that Mr. Rodriguez could not return to his former job as a truck driver due to the sensitivity, stiffness and pain in his toe.  Nevertheless, Mr. Rodriguez attempted to wear a pair of work boots and his toe immediately began to drain.  Dr. Nelson performed a third surgery to remove necrosis which had spread to the bone on October 5, 2005.

Dr. Nelson continued to treat Mr. Rodriguez and deemed him disabled through February 15, 2006.  Mr. Rodriguez attended six sessions of physical therapy that helped somewhat, but Mr.

Rodriguez continued to walk with a limp.   Mr. Rodriguez was not released to work until October 2006.  Plaintiff's counsel has contacted AIG Insurance Company on numerous occasions and has requested Mr. Rodriguez' workers compensation file.  Though the file has not been provided, AIG has recently sent a notice of lien in the amount of $55,395.98.

**B.    Lost Wages and Future Wage Loss**

It appears that AIG paid temporary total disability benefits to Mr. Rodriguez from May 23, 2005 through June 14, 2006 at a weekly rate of $474.53.  These payments total $26,302.52.  Mr. Rodriguez was earning $712.51 per week as calculated by AIG.  For the period of disability Mr. Rodriguez lost fifty-six weeks of full time pay for a loss of $13,598.04.

Mr. Rodriguez can no longer work as a truck driver.  He can no longer wear steel-toed boots due to the stiffness and pain in his toe.  Mr. Rodriguez attempted to return to work as a truck driver for a few days last year, but the pain and stiffness in his toe would not permit him to maintain this occupation.  Mr. Rodriguez intends to attend classes to become a contractor, but as he no longer receives benefits he is unable to afford vocational training.  Mr. Rodriguez is 45 years old and would have worked until at least age 65, or a total of 20 years in lost future earnings.  Mr. Rodriguez earned $38,475.54 annually, and as he is unable to return to his profession his total future wage loss is $769,510.80.

As stated above, AIG has not provided the medical bills for Mr. Rodriguez' treatment, but the amount of AIG's lien, less the disability sums paid to Mr. Rodriguez, is $29,093.46.  This amount represents the actual cost of Mr. Rodriguez' medical treatment.  In any case, given the severity of the injury, Mr. Rodriguez' inability to return to work, and the pain and suffering he has had to endure as a result of three surgeries plus additional removal of necrotic tissue with a scalpel, we believe a reasonable jury would award no less than $250,000.00.

## IV.

## CONCLUSION

Based on the above information, plaintiff has made a prima facie case against defendant OWENS.

Dated: July 29, 2008                    LAW OFFICES OF STEVEN R. JACOBSEN

By_____\\s\_____
                Brenda D. Posada
                Steven R. Jacobsen
                Attorneys for Plaintiff