**STEVEN R. JACOBSEN,** BAR NO. 95246
srj@theaccidentallawyer.com
**BRENDA D. POSADA,** BAR NO. 152480
bdp@theaccidentallawyer.com
LAW OFFICES OF STEVEN R. JACOBSEN
901 CLAY STREET
OAKLAND, CALIFORNIA 94607
TELEPHONE: (510) 465-1500

ATTORNEYS FOR PLAINTIFF
JOSE RODRIGUEZ

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RODRIGUEZ, | Case No.: C-07-03630 PJH |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE NO. 2; PLAINTIFF'S MOTION IN LIMINE NO. 3 RE: EXCLUSION OF LATE PRODUCTION OF DOCUMENTS** |
| vs. | |
| OWENS-BROCKWAY GLASS CONTAINER, INC., et al., | |
| Defendants. | TRIAL DATE: September 22, 2008<br>TIME:  8:30 a.m.<br>LOCATION:  Courtroom 3, 17th Floor |

## I.
## OPPOSITION TO MOTION IN LIMINE NO. 2

Defendant claims that the application of *Hanif v. Housing Authority* (1988) 200 Cal. App.3d 235, 239, and *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, require this court to preclude plaintiff from introducing the amounts charged for the services rendered at their usual and customary rate. Defendant, instead, claims that the evidence of medical special damages presented to the jury must be limited to only the amounts actually paid by plaintiff's insurance providers. A review of the cited authority demonstrates that counsel's arguments are without merit. The authority cited actually stands for the contrary position.

While it is true that under the *Hanif/Nishihama* rationale the court must modify a judgment, post verdict, to make sure that a plaintiff does not get an alleged windfall from a recovery of more

than the actual costs involved in satisfying the debt incurred, the *Nishihama* court expressly stated that judicial fairness was best advanced by allowing the jury to hear the true reasonable and necessary expense at it's full value.

In *Hanif* the court ruled that allowing the plaintiff to collect the full value of medical bills would be a windfall. (*Hanif v. Housing Authority* (1988) 200 Cal. App.3d 235, 239.) The appellate court stated that verdict had to be modified to reflect the amounts paid.

In *Nishihama*, the following occurred:

> The jury awarded plaintiff $20,295 for the costs of her medical care, which included the sum of $17,168 for care received by her from California Pacific Medical Center (CPMC). This amount was based on CPMC's normal rates. Plaintiff, however, participates in an employer-sponsored health plan administered by Blue Cross. At the time of plaintiff's care, Blue Cross had a contract with CPMC under which CPMC agreed that Blue Cross would pay reduced rates for specified services rendered to members, and CPMC would accept Blue Cross's payment as payment in full for those services. Under the terms of that agreement CPMC accepted $3,600 as payment in full for the services it rendered to plaintiff. The City concedes its responsibility to pay plaintiff the $3,600 paid to CPMC by Blue Cross. It complains, however, that the court permitted the jury to award damages for medical costs based on CPMC's normal rates, rather than the sum it actually accepted from Blue Cross.

(*Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 307.)

The court recognized that there is a conundrum between the rule preventing recovery by plaintiff of the full amount of such bills incurred and the inherent unfairness of preventing the jury from seeing the actual amount instead of the usual and customary charges. The court devised a simple and equitable solution to solve this injustice; to wit: "[S]imply modify the judgment to reduce the amount awarded as costs for medical care." (*Nishihama v. City and County of San Francisco* (2002) 93 Cal. App. 4th 298, 309.)

The court then explained its ruling as follows:

> We therefore conclude that the trial court erred in permitting the jury to **award** plaintiff $17,168 instead of $3,600 for CPMC's services. **We do not agree with the City, however, that this error requires remand, because the jury somehow received a false impression of the extent of plaintiff's injuries by learning the usual rates charged to treat those injuries. There is no reason to assume that the usual rates provided a less accurate indicator of the extent of plaintiff's injuries than did the specially negotiated rates obtained by Blue Cross. Indeed, the opposite is more likely to be true. We therefore will simply modify the judgment to reduce the amount awarded as costs for medical care.**" (emphasis added) (Id. at 309.)

Furthermore, the California Supreme Court's prior rulings demonstrate that such a solution is the only fair thing to do. For example, in *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 11–12, the Supreme Court held that "[T]he cost of medical care often provides both attorneys and juries in tort cases with an important measure for assessing the plaintiff's general damages. Thus, to permit the defendant to tell the jury that plaintiff ['s medical bills are a small fraction of what the actual billed amount really is] …might irretrievably upset the complex, delicate, and somewhat indefinable calculations which result in the normal jury verdict."

The Supreme Court explained one rationale for this fair-minded approach by additionally stating that since the "[j]ury is not informed that plaintiff's attorney will receive a large portion of the plaintiff's recovery in contingent fees … the plaintiff rarely actually receives full compensation for his injuries as computed by the jury. (*Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 12–13.

Another established public policy argument favors the *Nishihama* solution of post verdict reduction. As noted by the case of *Arambula v. Wells* (1999) 72 Cal.App.4th 1006, the collateral source rule acts to prevent a windfall to the defendant. "The rationale of the collateral source rule thus favors sheltering gratuitous gifts of money or services intended to benefit tort victims, **just as it favors insurance payments from coverage they had arranged. No reason exists in these circumstances to confer a bonanza upon the party causing the injury**."

It is no secret that jurors are left largely adrift in attempting to value general damages. Nor is it a mystery that they look to the amount of medical bills as a substantial factor in gauging the seriousness of an injury for purposes of assigning a general damage value. Defense counsel's primary aim in raising the *Hanif* issue is to mislead the jury as to the extent and seriousness of plaintiff's injuries and thereby reduce the general damage award. This violates the letter and spirit of Evidence Code §352.

The problem is that by allowing a tortfeasor to usurp the benefit of plaintiff's earned benefit would mean that a person who has neither invested their earnings, paid a lifetime of work to secure insurance benefits, nor qualified for public health benefits - but who otherwise received the same medical services - is going to be better off in terms of how a jury gauges the seriousness and extent

of injury and general damages that flow from that understanding than someone who had the benefit of carrying health coverage.

Therefore, the authorities cited by defendant and supplemental authorities cited by plaintiff all stand for the proposition that the usual rates reflected in billings provide a more accurate indicator of the extent of the plaintiff's injuries than do the discounted rates actually paid by AIG for the same services. In accordance with the holding of these cases the court may simply, prior to entering judgment, reduce the amount of medical specials, identified in a special verdict form, to the amount that was actually paid to satisfy the debt.

In conclusion, the court, in conformity with *Nishihama, Hanif* and *Helfend* should permit introduction of the actual market rates as reflected by the billings for the medical services and, post verdict, and prior to entering judgment, alter the verdict to reflect the amounts paid if these amounts exceed the sums paid by plaintiff's health insurance.

## II.
## MOTION IN LIMINE NO. 3-RE: TO EXCLUDE ANY AND ALL DOCUMENTS NOT PRODUCED BY DEFENDANTS DURING INITIAL DISCLOSURES

On July 30, 2008, after this court required plaintiff to designate deposition excerpts, disclose witness list and exhibit list, this defendant served its Supplemental Disclosures identify for the first time the certification records for Keaney and the Exhibit List Binder produced by defendant and received just a little over a week ago, include two documents never before produced. The documents are being first produced post the court's pre-trial deadlines and after plaintiff's forklift expert has provided all his opinions in accordance with FRCP 26 (2) (A). Plaintiff request this court preclude the following:

•Forklift certification records of John Keaney. (Produced for first time in Defendant's Exhibit List A15)

•Photograph of signage at the location of the incident (Produced for first time in Defendant's Exhibit List A9)

The supplemental disclosure fails to include copies of any of these documents. This disclosure is objectionable and should be stricken in that it is untimely and falls short of the

1 requirement under the FRCP 26 (a)(1)(B).

2 Firstly, initial disclosures were due early on in this case, 14 days after the Rule 26 (f) early conference; it was at that time that defendant should have provided copies of documents that support their defenses, including and/or a description by category and location of all documents, electronically-stored and/or tangible things in the "possession, custody, or control" and that the disclosing party may use to support its claims or defenses. See FRCP 26 (a)(1)(B). Plaintiff's complaint alleges that this defendant failed to train and/or improperly trained the forklift operator. Defendant's defense is that he was trained, although during his deposition John Keaney denied having received any training at Owens-Brockway. The training documents vaguely described in their Supplemental Disclosure directly pertains to this defense and yet defendants failed to produce same. Even if the documents "may be used" by the party, the documents must be produced. [Adv. Comm. Notes to 2000 Amendments to FRCP 26(a)(1). Also see *California Practice Guide:Federal Civil Procedure before Trial,* at 11:265.

Furthermore, absent substantial justification for failure to make the required initial disclosure, a party "is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." See FRCP 37 (c) (1). The failure to produce Keaney's training records in this case is not harmless.

It is instead at the eve of trial, after the expert has provided his opinions in his report, that this defendant produces these documents. The discovery deadline has long since elapsed and plaintiff is no longer permitted to follow-up on the type of training received by Mr. Keaney. In fact, he has been already deposed and at his deposition denies receiving any forklift training at Owens. Plaintiff's counsel has been prejudiced by their inability to explore the issue further with Mr. Keaney at his deposition and plaintiff's forklift expert is at a disadvantage in that he prepared his report with the benefit of this information. FRCP 26(2) requires he set forth all his opinions and if the documents are admitted Plaintiff's expert will need to modify his opinions. Plaintiff's expert was deposed on August 11, 2008 without the benefit of these additional materials since plaintiff seeks preclusion of the materials as the statute mandates.

///

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE
Case No. C-07-03630 PJH

1  Plaintiff's expert did not have the benefit of reviewing said training records or photograph of signage prior to formulating all his opinions as set forth in his report which was disclosed to defendant one month before receipt of their Exhibit Binder. Moreover, the discovery deadline in this case elapsed long ago, on March 24, 2008, per this Courts Order on October 19, 2007. Plaintiff has therefore been extremely prejudiced by defendant's failure to produce documents as required by FRCP 26. Failure to preclude these documents would be outcome determinative since plaintiff claim is for the most part negligence for failure to train John Keaney. Plaintiff's counsel had also been requesting that defendant produce these documents and were told that the documents did not exist.

Unless the nondisclosure is "harmless" or excused by "substantial justification", the court *must* impose this sanction. This "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." See Adv. Comm. Notes on 1993 Amendments to FRCP 26(a); also see *Yeti by Molly, Ltd. V. Deckers Outdoor Corp.* (9th Cir. 2001) 259 F3d 1101, 1106. Also see *California Practice Guide:Federal Civil Procedure before Trial,* at 11:341.

For the above reasons, defendant should be precluded from using the training records and the photograph of signage.

Dated: August 12, 2008                    LAW OFFICES OF STEVEN R. JACOBSEN


By_____\\s\_____
        Brenda D. Posada
        Steven R. Jacobsen
        Attorneys for Plaintiff