# EXHIBIT H



July 2, 2008

Steven R. Jacobsen Esq.
Law Offices of Steven R. Jacobsen
901 Clay St.
Oakland, CA 94607

Reference: **Rodriguez v. Owens-Brockway Glass Container Inc., et al.**

Mr. Jacobsen,

I have reviewed the following material on the above referenced case as submitted to me by your office. This letter serves as my written report of opinion of the cause of the forklift accident that occurred May 15th, 2005, at the Owens-Brockway Glass Container facility in Oakland California.

## Materials Reviewed

Plaintiff's Settlement Conference Statement
Deposition of Jose Rodriguez, December 12th, 2007
Deposition of John Keaney, January 10th 2008
Statement of Facts by Jose Rodriguez May 16th, 2005
Statement of facts by O/I PLT #20 Warehouse Supervisor May 18th, 2005 (name unknown)
Rodriguez Oakland Dock video 2/16/06

## Description of Accident

At about 4:00 p.m.., on May 15, 2005, Jose Rodriguez, a Class A truck Driver for Yandell Trucking pulled his truck into Building 10 at the Owens-Brockway Glass Container facility located at 3600 Alameda Ave., in Oakland, California. Mr. Rodriguez' truck was to be loaded with glass containers for shipment to another location. At about 4:30 p.m., Mr. Rodriguez approached his trailer to check on the loading progress and as he stood to look into the back of the trailer, the forklift operator, John Keaney, reversed his forklift and came down the dock bridge plate, out of the trailer. In doing so, the forklift operator looked to his right before exiting the trailer, but did not notice Mr. Rodriguez, who was standing on his left side. The forklift then hit Mr. Rodriguez' left hip and knee and the forklift tire ran over his right foot, resulting in significant injury.

*LiftSafe Forklift Safety Consultants* ● *331 La Questa Dr* ● *Danville, CA. 94526*
*Phone 925-838-8859* ● *Fax 925-831-9747* ● *www.liftsafe.com*

"*Safe and Productive Forklift Operation is Our Goal*"

*July 2, 2008*
*Page 2*

## Analysis of Accident

Loading docks are very busy places, subjecting pedestrians as well as equipment operators to numerous hazards. Several factors contributed to the injuries suffered by Mr. Rodriguez. The factors include the operating environment, operating rules, and operator training. OSHA, CalOSHA and industry standards such as ANSI/ITSDF B56.1-2005 Safety Standards for Low Lift and High Lift Trucks, all address these three important areas as they relate to this accident.

**Operating environment**

Mr. Rodriguez parked his truck as directed in the proper location for the loading process. Once the truck was in position, the rear doors opened and the truck readied for loading, the process was left up to the forklift operator to commence loading. Based on testimony provided by the forklift operator John Keaney, truck drivers are allowed to check their truck at will and there are no controls in place to segregate forklift activity from truck drivers.

With no controls in place governing pedestrian safety, the likelihood of a forklift/ pedestrian accident is significant. Forklift operators must be constantly aware of pedestrians in the work space, and even more so when controls are not in place to segregate forklifts from people on foot. Industry accepted best practice is to require drivers to wait in the safety of their cabs or have a driver waiting lounge where drivers are required to stay until the loading/offloading process is complete.

This was not the case at Owens-Brockway. Drivers were allowed to freely roam and chat with each other and Owens-Brockway employees, and check their truck as they see fit. While not excusing the forklift operator from their responsibility to always be aware of pedestrians, the lack of pedestrian controls significantly increases the risk of an accident.

**Operating Rules**

The operations of powered industrial trucks, aka forklifts, are governed by Federal and state regulations as well as industry standards. These regulations and standards are all based on studies of real world accidents, and as such, are in place for the safety of everyone in the workplace. Regulations and standards not followed by the forklift operator in this case amount to the following:

**CalOSHA GISO 3650 (12):** *Operators shall look in the direction of travel and not move a vehicle until certain that all persons are in the clear.*

**OSHA 1910.178 (n)(6):** *The driver shall be required to look in the direction of, and keep a clear view of the path of travel.*

**ANSI/ITSDF B56.1, 5.3.6:** *Traveling-Keep a clear view of path of travel and observe for other traffic, personnel, and safe clearances.*

It is vital that forklift operators are aware of their surroundings. In an "open" environment like the one that existed at Owens Brockway on the day of the accident, it is imperative that forklift operators anticipate the possibility that a driver will, at any time, check the load in their truck. By anticipating the driver's actions in advance, the forklift operator should always look over both shoulders before moving the forklift.

*July 2, 2008*
*Page 3*

**Operator training**

OSHA regulation 1910.178(l); and CalOSHA regulation GISO 3668 both require that employers provide formal instruction for forklift operators in the hazards associated with powered industrial trucks. In addition, operators are required to receive practical (hands on) training and pass an evaluation of the operator's performance in the workplace. The regulation requires the following documentation:

> The name of the operator
> The date of the training
> The date of the evaluation
> The identity of the person(s) performing the training and evaluation

The defendant in this case, Owens-Brockway has not provided any documentation to indicate that OSHA/CalOSHA compliant training took place. While Mr. Keaney has testified that he had received training at previous employers as well as Owens Brockway, the proof that the training was equipment and site specific, as required by the regulations, is lacking.

The training requirement is quite specific, and includes coverage of the general hazards created by forklift use as well as the specific hazards that exist with a particular workplace or equipment type. The complete text of the regulation is as follows:

***OSHA 1910.178(l) and CalOSHA GISO 3668 Forklift Operator training:***

*(l)(1) Safe operation.*

*(l)(1)(i) The employer shall ensure that each powered industrial truck operator is competent to operate a powered industrial truck safely, as demonstrated by the successful completion of the training and evaluation specified in this paragraph (l).*

*(l)(1)(ii) Prior to permitting an employee to operate a powered industrial truck (except for training purposes), the employer shall ensure that each operator has successfully completed the training required by this paragraph (l), except as permitted by paragraph (l)(5).*

*(l)(2) Training program implementation.*

*(l)(2)(i) Trainees may operate a powered industrial truck only:*

*(l)(2)(i)(A) Under the direct supervision of persons who have the knowledge, training, and experience to train operators and evaluate their competence; and*

*(l)(2)(i)(B) Where such operation does not endanger the trainee or other employees.*

*(l)(2)(ii) Training shall consist of a combination of formal instruction (e.g., lecture, discussion, interactive computer learning, video tape, written material), practical training (demonstrations*

*July 2, 2008*
*Page 4*

performed by the trainer and practical exercises performed by the trainee), and evaluation of the operator's performance in the workplace.

*(l)(2)(iii)* All operator training and evaluation shall be conducted by persons who have the knowledge, training, and experience to train powered industrial truck operators and evaluate their competence.

*(l)(3)* **Training program content.** Powered industrial truck operators shall receive initial training in the following topics, except in topics which the employer can demonstrate are not applicable to safe operation of the truck in the employer's workplace.

*(l)(3)(i)* Truck-related topics:

*(l)(3)(i)(A)* Operating instructions, warnings, and precautions for the types of truck the operator will be authorized to operate;

*(l)(3)(i)(B)* Differences between the truck and the automobile;

*(l)(3)(i)(C)* Truck controls and instrumentation: where they are located, what they do, and how they work;

*(l)(3)(i)(D)* Engine or motor operation;

*(l)(3)(i)(E)* Steering and maneuvering;

*(l)(3)(i)(F)* Visibility (including restrictions due to loading);

*(l)(3)(i)(G)* Fork and attachment adaptation, operation, and use limitations;

*(l)(3)(i)(H)* Vehicle capacity;

*(l)(3)(i)(I)* Vehicle stability;

*(l)(3)(i)(J)* Any vehicle inspection and maintenance that the operator will be required to perform;

*(l)(3)(i)(K)* Refueling and/or charging and recharging of batteries;

*(l)(3)(i)(L)* Operating limitations;

*(l)(3)(i)(M)* Any other operating instructions, warnings, or precautions listed in the operator's manual for the types of vehicle that the employee is being trained to operate.

*(l)(3)(ii)* Workplace-related topics:

*(l)(3)(ii)(A)* Surface conditions where the vehicle will be operated;

*(l)(3)(ii)(B)* Composition of loads to be carried and load stability;

*July 2, 2008*
*Page 5*

(l)(3)(ii)(C) Load manipulation, stacking, and unstacking;

(l)(3)(ii)(D) Pedestrian traffic in areas where the vehicle will be operated;

(l)(3)(ii)(E) Narrow aisles and other restricted places where the vehicle will be operated;

(l)(3)(ii)(F) Hazardous (classified) locations where the vehicle will be operated;

(l)(3)(ii)(G) Ramps and other sloped surfaces that could affect the vehicle's stability;

(l)(3)(ii)(H) Closed environments and other areas where insufficient ventilation or poor vehicle maintenance could cause a buildup of carbon monoxide or diesel exhaust;

(l)(3)(ii)(I) Other unique or potentially hazardous environmental conditions in the workplace that could affect safe operation.

(l)(3)(iii) The requirements of this section.

**(l)(4) Refresher training and evaluation.**

(l)(4)(i) Refresher training, including an evaluation of the effectiveness of that training, shall be conducted as required by paragraph (l)(4)(ii) to ensure that the operator has the knowledge and skills needed to operate the powered industrial truck safely.

(l)(4)(ii) Refresher training in relevant topics shall be provided to the operator when:

(l)(4)(ii)(A) The operator has been observed to operate the vehicle in an unsafe manner;

(l)(4)(ii)(B) The operator has been involved in an accident or near-miss incident;

(l)(4)(ii)(C) The operator has received an evaluation that reveals that the operator is not operating the truck safely;

(l)(4)(ii)(D) The operator is assigned to drive a different type of truck; or

(l)(4)(ii)(E) A condition in the workplace changes in a manner that could affect safe operation of the truck.

(l)(4)(iii) An evaluation of each powered industrial truck operator's performance shall be conducted at least once every three years.

**(l)(5) Avoidance of duplicative training.** If an operator has previously received training in a topic specified in paragraph (l)(3) of this section, and such training is appropriate to the truck and working conditions encountered, additional training in that topic is not required if the operator has been evaluated and found competent to operate the truck safely.

**(l)(6) Certification.** The employer shall certify that each operator has been trained and evaluated as required by this paragraph (l). The certification shall include the name of the

*July 2, 2008*
*Page 6*
*operator, the date of the training, the date of the evaluation, and the identity of the person(s) performing the training or evaluation.*

As indicated by the above powered industrial truck training regulation, the workplace operating environments, as well as the equipment being used, are key components to address when developing a compliant forklift training program. In doing so, employers are required to take a close look at their facility and identify areas where the greatest hazards exist. Once identified, effort must be put forth to eliminate the hazard or reduce the exposure to the hazard as best they can. In many cases, supplemental equipment such as backup alarms and rear view mirrors installed on forklifts can enhance the safety of the workplace.

According to the Mr. Rodriguez' testimony, there was no backup alarm sound when he was struck. It is unknown to me whether or not the forklift involved with the accident had any supplemental rear view mirrors installed, but they also would have enhanced safety by improving rear peripheral vision. Please note, these mirrors would not take the place of an operator looking behind when traveling in reverse, but rather facilitate being able to see behind while looking forward as the operator pulls out of the load.

## Summary

Accidents involving forklifts and truck drivers during the loading and unloading process are, unfortunately, not uncommon. When a pedestrian is near a lift truck that is handling a load in any fashion, i.e.; stacking, placing or positioning a load, the pedestrian is considered to be in the "zone of danger". This "zone of danger" is controlled by the operator of the equipment, whereby he alone is in control of the pedestrian's safety, **as long as the pedestrian is allowed to remain in the area where injury may occur.**

Truck drivers and other pedestrians must not be allowed in the loading area. If it is necessary for a truck driver to inspect his or her load, specific "safe areas" where the truck driver can observe the loading process should be clearly marked, and enforcement of these areas maintained. Operators must look over both shoulders before backing to assure their path of travel is clear. When an operator receives initial training and is being evaluated, specific emphasis should be placed on the importance of checking the path of travel.

In conclusion, it is my opinion that operator error due to lack of proper training, and disregard on the part of management to limit pedestrian traffic in the loading area, was the cause of the injury suffered by Mr. Rodriguez. Should additional discovery materials surface that alter this opinion, I reserve the right to supplement this conclusion upon receipt of said materials.

Robert P. Jasinski

*[signature]*

LiftSafe Inc. Forklift Safety Consultants

## PROOF OF SERVICE BY MAIL

I declare under penalty of perjury, under the laws of the State of California, that: I am employed in the County of Alameda; I am over the age of eighteen years and not a party to the within action; my business address is 901 Clay Street, Oakland, California 94607; on the date below written I served copies of the attached

### *EXPERT REPORT OF ROBERT P. JASINSKI*

on all parties and the mediator by placing true copies thereof in sealed envelopes, with postage fully prepaid, in the United States mail at Oakland, California, addressed as follows:

Stephen M. Hankins, Esq.
Bita A. Karabian, Esq.
SCHIFF, HARDIN LLP
One Market, Spear Street Tower, 32nd Floor
San Francisco, CA 94105

Counsel for defendant was also served by facsimile transmission at the following facsimile Number (415) 901-8701.

Executed at Oakland, California on July 3, 2008.

_____
Brenda D. Posada .